Kottmyer, J.
BACKGROUND
This is a medical malpractice action against five physicians who are alleged to have treated plaintiff Judith Coggins (“Coggins”) while she was hospitalized *206 at the University of Massachusetts Medical Center (“UMMC”) between November 8, 1995 and February 20, 1996. There are no claims for intentional misconduct. Defendants have moved for summary judgment on the grounds that they are public employees and therefore immune from liability for negligence under the Tort Claims Act, G.L.c. 258, §2. For the reasons which follow, defendants’ motion for summary judgment is ALLOWED.
SUMMARY JUDGMENT RECORD
The undisputed facts viewed in the light most favorable to plaintiffs are as follows. In 1995, all of the defendants were employed by the Commonwealth of Massachusetts (“Commonwealth”) as attending physicians at UMMC and faculty members of the University of Massachusetts Medical School (“University”). Their appointments as University faculty members included serving as attending physicians, providing care and performing administrative duties. They had employment contracts with the University in which they agreed to be bound by the policies, rules, and regulations adopted by the Board of Trustees of the University.
From November 1995 through February 1996, the defendants were employed only by the University and their salaries were fixed and paid by the Commonwealth. Their salaries were not variable and did not depend on the number of patients they treated. They did not receive payment directly from patients for their services at UMMC. As full time members of the faculty of the University, they were required to participate in the University’s Group Practice Plan where funds collected from patients were deposited into a Commonwealth account and used for purposes established by the Trustees of the University. The only offices the defendants had were those assigned to them by the Commonwealth. During the relevant time period, the physicians’ work schedules were established and assigned to them by the Division Chief and Chairman of the Department.
Pursuant to their employment contracts, the defendants were required to attend regularly scheduled Division and Department meetings. They reported to the Division Chief and the Chairs of their respective Departments for advice and general direction on both academic and clinical matters. They were required to assume any responsibilities assigned to them by the Chair of the department.
The defendant physicians had no discretion over which patients they treated. If a patient who needed care was admitted during a doctors’ on-call rotation, he or she would serve as the attending physician for that patient until the rotation was complete. The defendants did not have any private patients. Absent unusual circumstances, they treated all patients exclusively by virtue of their positions and duties as employees of the Commonwealth and attending physicians at UMMC.[3] Plaintiff Judith Coggins was treated by each of the doctors only at UMMC and exclusively by virtue of their positions and duties at the University and UMMC.
The defendants were listed as employees of the Commonwealth both in their employment contracts and in the University W-2 forms. They were required to participate in the Commonwealth’s contributory retirement plan and participated in the group health insurance plan of the Commonwealth. They were afforded sick time and vacation time as part of their employment benefits package from the University.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. See Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. See Pederson v. Time, Inc., 404 Mass. 14, 16-17(1989). A party which does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. See Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). Once the party moving for the summary judgment has shown that there is no genuine issue of material fact, the burden is then upon the opposing party to respond and allege specific facts showing that there is a triable issue. John B. Deary, Inc. v. Crane, 4 Mass.App.Ct. 719, 722 (1976).
In support of their motion for summary judgment, the defendants claim that they are public employees and thus immune from liability under the Massachusetts Tort Claims Act, G.L.c. 258, §2 (“the Act”). The Act provides that “public employers shall be liable for injury... or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment. ..” G.L.c. 258, §2. The public employee escapes liability while the public employer is liable for the public employee’s negligent acts. See Kelly v. Rossi, 395 Mass. 659, 661 (1985). The issue before the Court is whether there is a material question of fact as to the employment status of the five defendants, doctors at UMMC.[4]
The fact that the University of Massachusetts is a public employer does not automatically establish that all its employees are public employees. Smith v. Steinberg, 395 Mass. 666, 668 (1985). The test for determining whether an individual is a public employee is the same as that used to establish “whether an agent is a servant for whose negligent acts a principal may be liable under the common law doctrine of respondeat superior.” Kelley v. Rossi, 395 *207 Mass. 659, 661 (1985). In the case of a physician, the court examines whether a public employer directs and controls the physician’s treatment of the patient.[5] See McNamara v. Honeyman, 406 Mass. at 48; Smith v. Steinberg, 395 Mass. at 669.
Factors courts have considered in determining whether a physician is subject to the direction and control of the public employer include the following: whether the physician billed the patients directly; whether the employer regulated the physician’s hours; whether the physician had a choice over which patients he or she treated or where they were treated; the source of the physician’s compensation; whether the physician’s compensation was related to the number of patients seen; and whether the physician participated in the state retirement plan. See McNamara v. Honeyman, 406 Mass. at 48; Smith v. Steinberg, 395 Mass. at 668; Florio v. Kennedy, 18 Mass.App.Ct. 917, 918 (1984).
Plaintiff claims that the defendants were not under the control of UMMC because they exercised independent clinical judgment when treating patients. The Supreme Judicial Court has held that the fact that a physician must use independent judgment when treating patients is not by itself determinative of the question whether the physician is a “public employee” under the Act. See Kelley, 395 Mass. at 662. “While physicians exercise independent judgment, a physician can still be deemed a servant where the principal controls the details of the physician’s activities.” McNamara, 406 Mass. at 48, citing Kelley, 395 Mass. at 662. In McNamara, the Court held that the evidence was sufficient to support a finding that the defendant psychiatrist was a public employee where he received a fixed salary which did not depend on the number of patients he treated, had no private patients and had no say in which patients were assigned to him and where his hours and place of work were established by his superiors. Id.
In the present case, it is undisputed that defendants are subject to the obligation imposed on all physicians to exercise their independent professional judgment in the treatment of their patients.[6] Moreover, there is no dispute as to the facts specific to these particular defendants’ employment status. All of these facts point toward public employment; no individual fact and no combination of the facts would support an inference that defendants are not public employees. Accordingly, denial of summary judgment in this case would be warranted only if a defendant’s status as a physician is sufficient in and of itself, as a matter of law, to support a finding that he not a public employee.
The Supreme Judicial Court has clearly stated that a physician is not always an independent contractor even though the profession is distinct and requires a high level of skill and training, and the physician must use independent judgment. See Kelley v. Rossi, supra, 395 Mass. at 661-62. I therefore rule that the undisputed facts establish that the defendant physicians were under the direction and control of UMMC and are immune from individual liability under the Act. Florio v. Kennedy, 18 Mass.App.Ct. 917 (1984) (rescript) (summary judgment affirmed where defendant physician was employed by the Commonwealth, worked a set forty hours per week, was paid a fixed weekly salary, participated in the Commonwealth’s retirement and insurance plans, had an assigned office, did not treat private patients and treated only patients assigned by the hospital). Compare Smith v. Steinberg, supra, 395 Mass. at 668 (denial of defendant doctor’s motion for summary judgment affirmed where defendant had control (outside of his instructional duties) over his hours of work, where he worked and which patients he treated, held staff appointments at three other hospitals and received compensation dependent on his productivity); Kelly v. Rossi, supra, 395 Mass. at 661 (summary judgment reversed because there was a material question of fact as to whether resident at Boston City Hospital who treated plaintiff while on rotation working in the emergency room of a private hospital was a public employee).
ORDER
For the reasons stated above, it is hereby ORDERED that the motions for summary judgment of defendants Peter Krims, M.D., Richard Swanson, M.D., Jolm R. Saltzman, M.D., Nilima A. Patwardhan, M.D., and Frederick Curley, M.D. are ALLOWED.

 There is evidence In the record that at least one of the defendants, Dr. Patwardhan, performed one and possibly two operations at St. Vincent’s Hospital at the request of the Chief of Surgery at St. Vincent’s because St. Vincent’s did not have a thyroid specialist. Based on the record, it appears that payment for such surgeries was made to the Group Practice Plan, and not to Dr. Patwardhan. There is no dispute that all of plaintiffs treatment took place at UMMC. Accordingly, the fact that Dr. Patwardhan performed a small number of unrelated surgeries at the request of St. Vincent’s is insufficient to create a material question of fact as to her status as a public employee.

 It has been established that the University of Massachusetts is a “public employer” for the purposes of the Act. McNamara v. Honeyman, 406 Mass. 43, 47-48 (1989).

 In Miller v. Kurkjian, 9 Mass. L. Rptr. 591, 1999 Mass. Super. LEXIS 47, Norfolk Superior Court (Gants, J.), the court reviewed the relevant case law and concluded that there are currently two interpretations of the standard employed to determine whether a physician is under the “direction and control” of the employer and thus immune under the Act. Formerly, the Supreme Judicial Court employed the standard articulated in Kelley, which stated that a physician is not a servant where the hospital cannot control the details of the physician’s activities. Kelley, 395 Mass. at 662. In Kelley, the Court acknowledged that, under this standard, “a physician, by the very nature of his duties, would rarely be found to be a public employee.” Kelley, 395 Mass. at 662.
The Court in Miller observed that although the Supreme Judicial Court has never repudiated its language in Kelley, it has not applied that narrow interpretation in subsequent *208 cases. Miller, 9 Mass. L. Rptr. 591, 1999 Mass. Super. LEXIS 47. In essence, “the standard that an employer must ‘exercise control over the details of the physician’s treatment of a patient’ to be vicariously liable, has been re-interpreted to require that the employee simply be subject to the direction and control of the public employer." Id.

 The issue of an obligation to exercise independent professional judgment in the details of the work is, of course, not unique to physicians, but has potential applicability to a number of professions. For example, a licensed electrician whose employer is not also a licensed electrician is not subject to direction and control in performance of the details of his work, but must adhere to the applicable codes and standards. In doing so, he will no doubt be called upon to exercise his independent professional judgment.