ANTONIETTA BELLANTI, administratrix,[1] vs. BOSTON PUBLIC
HEALTH COMMISSION.

No. 06-P-1288.

Suffolk. May 16, 2007. - October 4, 2007.

Present: GRASSO, BERRY, & COHEN, JJ.

*Municipal Corporations,* Governmental immunity, Liability for tort. *Mas-
sachusetts Tort Claims Act. Practice, Civil,* Presentment of claim under
Massachusetts Tort Claims Act. *Notice,* Claim under Massachusetts Tort
Claims Act.

Discussion of jurisdictional issues regarding the appealability of an order of a
trial court judge in an action brought pursuant to the Massachusetts Tort
Claims Act, G. L. c. 258, and the timeliness of the defendant's appeal
therefrom. [405-406]
In a wrongful death action brought pursuant to the Massachusetts Tort Claims
Act, G. L. c. 258, the trial court judge erred in denying the defendant's
motion for summary judgment, where it was undisputed that the plaintiff
had failed to make presentment upon the proper executive officer, as
required by G. L. c. 258, § 4, and where no recognized exception to
compliance with that section applied on the facts of the case. [406-409]

CIVIL ACTION commenced in the Superior Court Department on
September 13, 2005.

The case was heard by *Regina L. Quinlan,* J., on a motion for
summary judgment, and a motion for reconsideration was heard
by her.

*Christine M. Hayes* for the defendant.

*Andrew W. Pasquina (Paul R. Thebaud* with him) for the
plaintiff.

COHEN, J. In this appeal from the denial of the defendant's mo-
tion for summary judgment, we again consider whether a lawsuit
brought pursuant to the Massachusetts Tort Claims Act, G. L.

[1] Of the estate of Felice Bellanti.

c. 258, founders on the shoals of the presentment requirement.[2] Because it is undisputed that the plaintiff failed to make presentment upon the proper executive officer, as required by G. L. c. 258, § 4, and because no recognized exception to compliance with that section applies on the facts of this case, we are constrained to reverse the motion judge's decision.

*Background.* The plaintiff brought this wrongful death action against the Boston Public Health Commission (commission), alleging negligence by employees of Boston Emergency Medical Services (Boston EMS) in transporting the plaintiff's decedent, Felice Bellanti (Bellanti), to the hospital by ambulance. Boston EMS is a department of the commission, which is "organized as a 'body politic and corporate and political subdivision of the [C]ommonwealth.' " *Daveiga* v. *Boston Pub. Health Commn.*, 449 Mass. 434, 437 (2007), quoting from St. 1995, c. 147, § 3(*a*). Presentment of claims against the commission is required to be made upon the commission's executive director. *Id.* at 443. It is undisputed that the plaintiff never sent a presentment letter specifically addressed to the commission's executive director, although she sent timely letters to the mayor of the city of Boston, the deputy superintendent of Boston EMS, and to the commission, generally, without identifying a particular recipient.[3]

The plaintiff's claim, as described in her complaint and her letters, may be summarized as follows: On March 25, 2003, Bellanti was transported by Boston EMS ambulance from his

[2]As a condition precedent to bringing a civil action for damages under the Massachusetts Tort Claims Act, G. L. c. 258, see *Vasys* v. *Metropolitan Dist. Commn.*, 387 Mass. 51, 54-55 (1982), the claimant must "present" the claim in writing, within two years after the cause of action arose, to the "executive officer" of the "public employer" against whom the claim is asserted, except that in the case of a city or town, presentment may be made to any of several designated officials, including the mayor, and, in the case of the Commonwealth and its constituent agencies, presentment may be made to the Attorney General. See G. L. c. 258, § 4; *Daveiga* v. *Boston Pub. Health Commn.*, 449 Mass. 434, 436-437 (2007). Failing to make proper presentment is a recognized pitfall for practitioners. See Kenneally & Harvey, Traps for the Unwary 46 (Mass. Bar Assn. 5th ed. 2004).

[3]No issue is raised as to the adequacy of the letters' content. See generally *Gilmore* v. *Commonwealth*, 417 Mass. 718, 723 (1994); *Martin* v. *Commonwealth*, 53 Mass. App. Ct. 526, 529-530 (2002).

home to New England Medical Center, where he was to have a check-up. During the ambulance ride, a Boston EMS employee placed Bellanti's portable oxygen tank between his legs, despite the fact that the oxygen tank prominently displayed warnings that the equipment should be kept upright at all times and that frostbite could occur upon contact with its contents. During the ambulance ride, the tank leaked, resulting in second and third degree burns to Bellanti's inner thighs, scrotum, and penis. He suffered severe pain and swelling and later developed an infection, which, the plaintiff alleges, contributed to and was a proximate cause of his death, on May 4, 2003.

Viewing the evidence in the summary judgment record in the light most favorable to the plaintiff, see *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991), the following facts were established with respect to the presentment issue. Within a matter of hours after the incident, Neil Blackington, deputy superintendent of Boston EMS, learned about Bellanti's injuries from a supervisor in the communications center who had been called by a nurse in the emergency room where Bellanti was taken. Blackington's responsibilities included "oversee[ing] the investigation of internal and external concerns" and "represent-[ing] the department in certain medico-legal matters." Although Blackington did not have independent authority to settle claims against Boston EMS, he would go to the commission's legal department to obtain money for settlement.

Upon learning about Bellanti's injuries, Blackington began to collect incident reports and other pertinent information, which he forwarded to the commission's legal department. Blackington also had direct contact with Bellanti's family. Three days after the incident, on March 28, 2003, James Marriot, the husband of Bellanti's granddaughter, spoke to Blackington on the telephone on behalf of the family. During that conversation, Blackington told Marriot that Boston EMS was self-insured and that he was "the contact for Boston EMS relative to any claims." After speaking with Marriot, Blackington informed the commission's legal department about the call.

There matters stood until March 1, 2005, when an attorney retained to represent the plaintiff sent identical certified letters

to Blackington and to the mayor of Boston[4] describing the circumstances surrounding Bellanti's injuries and death and asserting a claim against Boston EMS. The letter stated at the top, in bold, "THIS IS A M.G.L. CHAPTER 258 NOTICE LETTER," and requested that the recipients provide advice "[i]f for any reason this notice is not sufficient." Blackington forwarded the letter that he received to the commission's legal department.

On March 31, 2005, the city of Boston law department responded to the letter that plaintiff's counsel had sent to the mayor. It advised plaintiff's counsel that the claim was denied and that the matter was under the jurisdiction of the commission. Thereafter, on April 21, 2005 — still within the two-year presentment period[5] — the plaintiff's attorney sent the same claim letter to the commission, addressed generically to "The Public Health Commission," at the proper address. Again, the letter requested, "[i]f for any reason this notice is not sufficient please advise." Counsel's letter was received by the commission (as reflected by a certified mail return receipt), but the commission never responded to that letter or to the earlier letter sent directly to Blackington and forwarded to the commission's legal department.

The plaintiff commenced this action against the commission on September 13, 2005. In its answer, the commission alleged failure to comply with G. L. c. 258, § 4, as an affirmative defense. Discovery ensued, including Blackington's deposition,

---

[4]Counsel evidently assumed that Boston EMS is an agency of the city of Boston. If that were the case, notice upon the mayor would have complied with the presentment requirement. See G. L. c. 258, § 4. Boston EMS is, however, a department of the commission, which is not a city agency. *Daveiga* v. *Boston Pub. Health Commn.*, *supra* at 437. Confusion as to the public employer's status does not excuse improper presentment. See *id.* at 443.

[5]The parties and the motion judge appear to have assumed that presentment was due within two years of March 25, 2003, when Bellanti was injured, and that the April 21, 2005, letter was untimely. However, G. L. c. 258, § 4, provides that the two-year presentment period runs from the date the claimant's cause of action arises (accrues). See note 2, *supra*. Because a cause of action for wrongful death accrues at the time of death and not at the time of injury, the plaintiff had two years from May 4, 2003, the date of Bellanti's death, in which to make presentment of her wrongful death claim. See *Fearon* v. *Commonwealth*, 394 Mass. 50, 52 (1985). See also *Martinelli* v. *Burke*, 298 Mass. 390, 391 (1937), and cases cited. We therefore take into account the April 21, 2005, letter.

in which he denied telling John Auerbach, the commission's executive officer, about the claim or having any information whether Auerbach received knowledge from any other source. On January 24, 2006, the commission filed a motion for summary judgment on the ground of defective presentment. The plaintiff produced no evidence suggesting that the proper recipient of presentment, Auerbach, received a copy of either the letter to Blackington or the later letter addressed to the commission generally. The judge nevertheless concluded that a question of material fact remained whether Auerbach "ultimately had actual knowledge of the plaintiff's claim."

The judge's order denying summary judgment entered on the docket on April 20, 2006. On Monday, May 1, 2006, the commission served a motion for reconsideration upon the plaintiff, which, pursuant to Superior Court Rule 9D (2004), was forwarded to the court along with the plaintiff's opposition and docketed on May 15, 2006. The motion for reconsideration included an affidavit from Auerbach, averring that he never was presented with any written notice of the plaintiff's claims, never saw any written documentation regarding the case, and had no personal knowledge of the plaintiff's claims until late March, 2006. The judge denied the motion for reconsideration on May 22, 2006.

On June 20, 2006, the commission filed a notice of appeal from the order of April 20, 2006, denying its motion for summary judgment. Although not purporting to appeal from the denial of its motion for reconsideration, the notice explained that the commission's motion for reconsideration had not been denied until May 22, 2006. The notice also stated that the appeal was being taken under the doctrine of present execution.

*Discussion.* Before proceeding to the merits, we comment briefly upon jurisdictional questions raised by the panel with respect to the appealability of the judge's order and the timeliness of the commission's appeal, which the parties addressed at oral argument and in postargument letters to the court. As a result of two recent decisions, these questions have been resolved. In *Daveiga* v. *Boston Pub. Health Commn.*, *supra*, the Supreme Judicial Court accepted the view that the denial of a motion for summary judgment brought on the basis of defective presentment related to immunity under G. L. c. 258 and was immedi-

ately appealable under the doctrine of present execution. *Id.* at 435 n.2. In *Slade* v. *Ormsby*, 69 Mass. App. Ct. 542, 544-545 (2007), this court held that where the appellant filed a timely motion pursuant to Mass.R.Civ.P. 59(e), 365 Mass. 827 (1974), seeking reconsideration of an order immediately appealable under the doctrine of present execution, the thirty-day appeal period ran anew from the date that the order denying the motion for reconsideration entered on the docket.

In the present case, the commission's motion for reconsideration was timely served on the Monday immediately following the expiration, on Sunday, April 30, 2006, of the ten-day period prescribed by rule 59(e), see Mass.R.Civ.P. 6(a), 365 Mass. 747 (1974); and its notice of appeal was properly filed within thirty days of the entry on the docket of the order denying its motion for reconsideration. See Mass.R.A.P. 4(a), as amended, 430 Mass. 1603 (1999). There being no procedural impediment to the commission's appeal, we turn now to the merits.

Generally speaking, the requirement that timely, written presentment be made to the designated executive officer is strictly enforced. See, e.g., *Weaver* v. *Commonwealth*, 387 Mass. 43, 47 (1982); *Martin* v. *Commonwealth*, 53 Mass. App. Ct. 526, 528-529 (2002).[6] Presentment must go to the proper individual; constructive notice is not sufficient.[7] *Weaver* v. *Commonwealth*, *supra* at 47-48. *Garcia* v. *Essex County Sheriff's Dept.*, 65 Mass. App. Ct. 104, 108 (2005).

Nevertheless, there are two recognized exceptions under which a claim may go forward even if notice was not given to the designated executive officer. First, under the "lulling" excep-

---

[6] There is, perhaps, somewhat greater flexibility with respect to the content of the presentment. *Martin* v. *Commonwealth*, *supra* at 528-529.

[7] In this respect, the Massachusetts Tort Claims Act differs from the Federal Tort Claims Act (FTCA). A claim under the FTCA is properly presented if submitted to "the appropriate Federal agency." 28 U.S.C. § 2401(b) (2000). By regulation, when a claim is presented to the wrong agency, that agency is required to transfer it to the proper one and notify the claimant, in which case the claim will be considered presented as of the date it is received by the proper agency. 28 C.F.R. § 14.2(b)(1) (2006). If an agency to which written notice is incorrectly provided fails to comply with the transfer regulation, a timely but misdelivered claim nevertheless may be deemed to have been timely presented to the proper agency. See *Bukala* v. *United States*, 854 F.2d 201, 204 (7th Cir. 1988).

tion, the public employer will be estopped from asserting any defect in presentment, including failure to make presentment to the proper individual, if, during the conduct of the litigation and at a time when presentment still could have been made, the plaintiff was led to believe that presentment would not be an issue in the case. See *Vasys* v. *Metropolitan Dist. Commn.*, 387 Mass. 51, 56-57 (1982); *Moran* v. *Mashpee*, 17 Mass. App. Ct. 679, 681 (1984); *White* v. *Metropolitan Dist. Commn.*, 21 Mass. App. Ct. 106, 109-110 (1985). Second, under the "actual notice" exception, the presentment requirement will be deemed fulfilled if the plaintiff can show that, despite defective presentment, the designated executive officer had actual notice of the written claim. See *Lopez* v. *Lynn Hous. Authy.*, 440 Mass. 1029, 1030 (2003).

In the present case, the lulling exception has no relevance. At no time during the case did the plaintiff receive any assurance that she would not be held to proper presentment. Even though Blackington told Bellanti's family that he was "the contact for Boston EMS relative to any claims," that statement does not bring this case within the lulling exception. The only issue presented is whether the actual notice exception applies on these facts. Precedent dictates that it does not.

As established in *Lopez* v. *Lynn Hous. Authy.*, *supra*, the actual notice exception is narrow. In *Lopez*, the plaintiff had addressed his correspondence to the "Lynn Housing Authority," generically. Thereafter, the proper recipient of presentment, the authority's executive director, sent the plaintiff's attorney a letter acknowledging the claim and stating that, after investigation, the claim was denied. The Supreme Judicial Court held that in those "unique circumstances," where "the claim was ultimately received in writing and acted on by the appropriate executive officer," it would serve no purpose to bar the plaintiff's action. *Ibid.*

In the present case, even without considering the Auerbach affidavit, which was not before the judge when she ruled on the summary judgment motion, the defendant established that there was no genuine issue of material fact that Auerbach had not been provided with and had not acted upon the plaintiff's presentment letter. Once the defendant established this, it was the

plaintiff's burden to produce evidence from which a conclusion that Auerbach had actual knowledge of the claim could be drawn, and this she did not do. See generally *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991).[8]

This is so even though the record reflects that the plaintiff sent presentment letters to the commission generally, and to Blackington, the self-described contact person for the claim, who, in turn, forwarded it to the legal department to which he would turn for settlement money. Under our precedents, notice to the executive officer will not be inferred or imputed from the fact that others with responsibility for investigation and settlement of the dispute received the plaintiff's presentment letter and were in contact with the plaintiff. See *Garcia* v. *Essex County Sheriff's Dept.*, 65 Mass. App. Ct. 104, 108 (2005).[9] See also *Holahan* v. *Medford*, 394 Mass. 186, 189 (1985).

We recognize that this is a harsh result, particularly where it may have made no practical difference to the commission that Auerbach, himself, was not notified of the plaintiff's claim. The stated rationale for requiring strict adherence to the presentment requirement is to ensure that the designated individual has the opportunity to protect the public employer's interests by investigating the circumstances of a claim, evaluating whether an offer of settlement should be made, making budgetary provision for the payment of valid claims, and instituting measures to prevent similar claims in the future. See, e.g., *Weaver* v. *Commonwealth, supra* at 47-48; *Pickett* v. *Commonwealth*, 33 Mass. App. Ct. 645, 647 (1992). In the present case, it appears

---

[8]If the plaintiff had reason to believe that such evidence could be developed upon further discovery, the proper course was to invoke Mass.R.Civ.P. 56(f), 365 Mass. 824 (1974), authorizing the court to deny summary judgment or order a continuance to permit affidavits to be obtained or depositions or other discovery to be had. There is nothing in the record before us to indicate that the plaintiff relied upon rule 56(f) in opposing the commission's motion.

[9]In *Garcia*, the plaintiff's counsel sent a series of claim letters addressed to the sheriff's department's chief fiscal officer. After investigation, an attorney for the department replied and made an offer of settlement, which the plaintiff did not accept. The plaintiff's subsequent lawsuit was dismissed for failure to make proper presentment, because written notice was not sent to the sheriff, himself, as executive officer, and the sheriff's actual knowledge would not be inferred from the actions of the attorney. *Garcia* v. *Essex County Sheriff's Dept., supra.*

that Blackington, whose job was to "oversee the investigation of internal and external concerns" and "represent the department in certain medico-legal matters," and the legal department, which was his source for settlement funds, had these concerns well in hand. Indeed, the very fact that Auerbach was not informed of the plaintiff's claim[10] could be interpreted as further indication that Blackington and the legal department effectively had been delegated full responsibility for tort claims against the commission.[11]

In other situations where notice of a claim is required for essentially the same reasons — to provide opportunity for investigation, evaluation, settlement, the setting of reserves, and loss prevention — the Legislature or the courts have taken a more forgiving approach. See G. L. c. 106, § 2-318, inserted by St. 1973, c. 750, § 1 (failure to give notice of breach of warranty "shall not bar recovery under this section unless the defendant proves that he was prejudiced thereby"); G. L. c. 175, § 112, inserted by St. 1977, c. 437 (liability insurance coverage may not be denied on account of late notice, "unless the insurance company has been prejudiced thereby"); *Johnson Controls, Inc.* v. *Bowes*, 381 Mass. 278, 282 (1980) (as matter of common law, policies not covered by G. L. c. 175, § 112, may not be denied on late notice grounds unless insurer proves that it was prejudiced). In the context of presentment, however, it has been held that "[i]t is irrelevant that the defendant may not have suffered any prejudice by reason of the lack of actual notice." *Robinson* v. *Commonwealth*, 32 Mass. App. Ct. 6, 10 (1992). We are not in a position to change that rule.

*Conclusion.* There being no applicable, existing exception to the statutory requirement that presentment be made upon the commission's executive officer, we are obliged to conclude that the commission was entitled to summary judgment in its favor. The order denying the commission's motion for summary judg-

---

[10]In the Auerbach affidavit submitted with the commission's motion for reconsideration, he states that he had no personal knowledge of this matter until late March, 2006, more than six months after suit was filed.

[11]Alternatively, it is not beyond the realm of possibility that the executive director was insulated from the plaintiff's letters for strategic reasons — in order to preserve the commission's presentment defense.

ment is reversed. A new order shall enter allowing the motion, and judgment shall enter dismissing the complaint.

*So ordered.*